No. 26-50650

IN THE

# United States Court of Appeals for the Fifth Circuit

ANGSTROM AUTOMOTIVE GROUP, LLC,

Defendant-Appellant,

v.

TESLA, INC.,

Plaintiff-Appellee.

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
The Honorable Christopher R. Wolfe, Presiding Judge
Case No. 6:26-CV-00477

**RESPONSE IN OPPOSITION TO EMERGENCY
MOTION FOR IMMEDIATE STAY AND STAY OF INJUNCTION ORDER
AND WRIT OF REPLEVIN/SEQUESTRATION PENDING APPEAL**

MARC B. COLLIER
ETHAN GLENN
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
(512) 474-5201

KEVIN LIE
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
(713) 651-3607

August 8, 2026

*Counsel for Plaintiff-Appellee
Tesla, Inc.*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................5

      I.     Appellant Refuses to Release Tooling Owned by Tesla ...........5

      II.    The District Court Conducted an Evidentiary Hearing and Issued a TRO. ...................................................................................6

      III.   Less than 24 Hours Before Tesla's Retrieval Team Was Set to Arrive, Appellant Filed a Motion to Stay the TRO, and Its Affiliate Filed for Bankruptcy.........................................6

ARGUMENT ......................................................................................................8

      I.     The Court Lacks Jurisdiction Over This TRO Appeal. .............9

      II.    Appellant Has Not Shown That It Is Likely to Succeed on the Merits. ...............................................................................10

      III.   Appellant Will Not Suffer Irreparable Harm from the TRO. ........................................................................................19

      IV.   Tesla Will Be Substantially Harmed Absent Immediate Recovery of its Tooling. ........................................................20

      V.    Preventing Tesla from Recovering the Tooling is Not in the Public Interest.................................................................21

CONCLUSION...................................................................................................22

CERTIFICATE OF SERVICE ..........................................................................23

CERTIFICATE OF COMPLIANCE..................................................................23

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff-Appellee is Tesla, Inc.

2. Attorneys for Plaintiff-Appellee are Marc B. Collier, Ethan Glenn, Kayla Ahmed, and Kevin Lie of Norton Rose Fulbright US LLP.

3. Defendant-Appellant is Angstrom Automotive Group, LLC.

4. Attorneys for Defendant-Appellant are Stephen van Stempvoort and Todd Holleman of Miller Johnson.

5. Angstrom Aluminum Castings Texas, LLC is the entity currently in possession of the Tooling at issue in this appeal.

6. Bankruptcy counsel for Angstrom Aluminum Castings Texas, LLC is Jason Binford of Kane Russell Coleman Logan PC, Austin, Texas.

Dated: August 8, 2026

/s/ Ethan Glenn

Ethan Glenn

*Counsel for Plaintiff-Appellee Tesla, Inc.*

ii

Plaintiff-Appellee Tesla, Inc. ("Tesla") files this response to Defendant-Appellant Angstrom Automotive Group, LLC's ("Appellant") Emergency Motion for Immediate Stay and Stay of Injunction Order and Writ of Replevin/Sequestration Pending Appeal ("Motion"). The Court should deny the Motion and lift the Administrative Stay.

## INTRODUCTION

The Court should deny the Motion because Appellant has failed to establish appellate jurisdiction. The August 3, 2026 temporary restraining order (the "TRO") that Appellant challenges is just that—a non-appealable temporary restraining order that is limited in time and is not a final determination. The Court lacks the jurisdiction to review that order and must deny the Motion on that ground.

Even if the Court addresses the merits, it should still deny the Motion as Appellant is not facing irreparable harm absent a stay and is not likely to win on the merits of this appeal. The underlying dispute is about whether Tesla should be allowed to retrieve manufacturing equipment that it undisputedly owns and is critical to its production line (the "Tooling") from a supplier who stopped using the Tooling and refused to give it back. The district court, having considered full, substantial briefing and a multi-hour evidentiary hearing with arguments, witnesses, evidence, and credibility findings, decided that Tesla should be allowed to retrieve its Tooling while the case proceeds.

1

In doing so, the district court found that Tesla owns the Tooling and that Tesla would suffer irreparable harm from not being able to retrieve it. The TRO simply stops Tesla's irreparable harm by allowing it to retrieve something neither Appellant nor non-party Angstrom Aluminum Castings Texas, LLC ("AAC-Texas") claim ***any*** ownership in. To effectuate that order, the district court did what is explicitly allowed by the Federal Rules: bind individuals and entities that are found to be acting in concert and in active participation. Appellant, not AAC-Texas, then moved to stay that TRO pending appeal. The district court denied the motion, finding that Appellant has not made a strong showing of likelihood of success and that a stay would substantially injure ***Tesla***. The Court should not disturb the district court's considered judgment with the extraordinary remedy of a stay pending appeal.

First, there is no emergency here. The record reflects that neither Appellant nor AAC-Texas is currently using the Tooling. As Appellant is not using it and does not own or possess it, Appellant will not be harmed by Tesla retrieving it. The fact that non-party AAC-Texas currently possesses the Tooling and declared bankruptcy, and that the district court then exercised its original jurisdiction over a portion of that bankruptcy via an order that has not been appealed, is irrelevant. It is also no evidence of an emergency; both Tesla and Appellant are still before the district court, AAC-Texas's bankruptcy is just beginning in that same district, the district court still retains jurisdiction over all matters relating to the Tooling in that bankruptcy,

2

and both Tesla and AAC-Texas reside in the Western District of Texas. The Tooling is not being destroyed. If possession of the Tooling should somehow be found to ultimately reside with AAC-Texas, or that it should otherwise be returned, that can be ordered later. But more important, wherever the Tooling rests, it will not be with Appellant. Appellant loses nothing of value if Tesla retrieves it and will certainly not be irreparably injured. Tesla's harm, by contrast, is immediate and irreparable. TRO ¶¶ 5, 8.

Second, the district court did not err by issuing the TRO. It was presented voluminous evidence subject to Appellant's arguments and cross-examination and decided that Tesla, not Appellant, has a substantial likelihood of success on the merits, that Tesla is suffering irreparable harm, and that the balance of hardships and the public interest favor Tesla. No new evidence changes that analysis such that this Court should now flip those same factors to find in Appellant's favor and issue the stay.

Instead of addressing those issues, Appellant conflates and crosses different arguments to obfuscate what the district court actually ordered. First, it attempts to drag this Court into the detour of a contractual interpretation question, as it argues that the district court cannot bind AAC-Texas to the TRO as an "Affiliate" under the contract definition. That is incorrect. But in any event, whether AAC-Texas qualifies as an "Affiliate" under the contract is irrelevant because the district court

3

bound AAC-Texas under Rule 65(d)(2)(B)-(C) based on its active concert or participation with Appellant. Accordingly, Appellant's related argument that the district court cannot compel AAC-Texas to release the Tooling also fails because AAC-Texas is independently obligated to comply with the TRO under Rule 65. Appellant also argues that Tesla's retrieval will adversely impact AAC-Texas's bankruptcy. But the relevant inquiry for purposes of a stay is irreparable harm to the *movant* (i.e., the *Appellant* here), not to a non-appealing affiliate, so any harm to AAC-Texas should not be considered by the Court.

Appellant's Motion is simply another transparent attempt to delay Tesla from retrieving its own property. After waiting four days after the district court orally granted the TRO at the hearing (Dkt. 18), Appellant moved to stay the TRO pending appeal *after* performance of the order began. Dkt. 20. The district court denied that motion. Dkt. 28. AAC-Texas then filed immediately for bankruptcy to further delay Tesla's recovery. Dkt. 30. The district court prevented that gambit by withdrawing the bankruptcy reference solely as to the topic of Tesla's retrieval of its Tooling and deciding that the automatic stay did not prevent the TRO from being effectuated (and alternatively, ordering that it was lifted if it applied). Dkt. 34.

Now, having paraded failed arguments before the lower court, Appellant is engaged in its third delay tactic this week. But there is no emergency here; the Motion was filed a *week* after the oral granting of the TRO, two full days after the

4

district court denied Appellant's motion to stay, and was not even timely filed Friday under this Court's rules for emergency motions.[1]  It should be denied and the administrative stay lifted.

## BACKGROUND

### I.    Appellant Refuses to Release Tooling Owned by Tesla

Tesla's vehicles require custom parts.  Dkt. 1 ¶ 12.  Those parts are made using unique, customized Tooling that is manufactured specifically to Tesla's specifications.  *Id.* Pursuant to a binding contract (the "Contract"), Tesla's Tooling was used to produce parts for the Cybertruck at a facility in Troy, Texas (the "Anderton Facility").  *Id.* ¶¶ 13-14.  The Anderton Facility is operated by Appellant's affiliate AAC-Texas.  *Id.* ¶ 34.  Tesla owns the Tooling used by Appellant and AAC-Texas.  *Id.* ¶¶ 27-32; TRO ¶ 9.

Under the Contract, Tesla has a right to enter the Anderton Facility and take possession of its Tooling at any time and for any reason.  Dkt. 1 ¶ 36.  On July 13, 2026, Appellant informed Tesla that it intended to shut down the Anderton Facility and cease supplying parts to Tesla.  *Id.* ¶ 42.  Tesla demanded immediate release of its Tooling and Appellant refused.  *Id.* ¶¶ 43-48.  To avoid immediate, irreparable harm, Tesla filed a complaint on July 23, 2026 and moved for a temporary

---

[1] *See* Fifth Circuit Rule 27.3.  Appellant filed its emergency motion at 4:16 p.m.

restraining order and writ of replevin/sequestration simply so that it could retrieve the Tooling it owns.  Dkts. 1, 4.

## II.    The District Court Conducted an Evidentiary Hearing and Issued a TRO.

Following extensive briefing, the district court conducted an evidentiary hearing on July 31, 2026.  Dkt. 14.  At the end of that hearing, the district court orally granted Tesla's motion for a temporary restraining order, finding that Tesla's witnesses were credible and that all factors for a temporary restraining order were satisfied.  On August 3, the district court entered a written order finding that: Tesla's evidentiary witnesses were credible (TRO ¶ 3); Tesla has a substantial likelihood of success on the merits (*id*. ¶ 4); Tesla will incur irreparable harm if the requested relief is not granted (*id*. ¶ 5); the balance of hardships favors Tesla (*id*. ¶ 6); granting the requested relief is in the public interest (*id*. ¶ 7); Tesla owns the Tooling (*id*. ¶ 9); Appellant's affiliates, including AAC-Texas, are bound by the order under Rule 65 (*id*. ¶ 11); and Appellant will use best efforts to prepare the Tooling for removal on August 4, 2026 (*id*., Ex. A at 2).

## III.    Less than 24 Hours Before Tesla's Retrieval Team Was Set to Arrive, Appellant Filed a Motion to Stay the TRO, and Its Affiliate Filed for Bankruptcy.

Four days after the district court orally ruled, Appellant filed a motion to stay the TRO.  Dkt. 20.  At that time, ***performance of the TRO had been underway for hours***.  TRO, Ex. A.  Specifically, Appellant and all others bound by the order were

required to make their best efforts to complete preparing the Tooling for removal by *8 p.m. C.T. on that day (August 4, 2026)*, so that Tesla could begin the removal process at *8 a.m. C.T. the next day (August 5, 2026)*. *Id.* The district court denied the motion to stay, finding that "a stay would substantially injure Tesla in this proceeding given their need for the tooling at issue — [as] discussed at length during the TRO hearing." Dkt. 28 at 1.

Minutes *after* Appellant's 8:00 p.m. deadline to prepare the Tooling for removal on August 4, its counsel notified Tesla that AAC-Texas had filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Western District of Texas. Dkt. 30, Exhibit 1. Because of this filing, Tesla was asked to not retrieve its Tooling as the TRO ordered. Dkt. 30 at 2. Tesla filed a status report in the district court noting the inability to comply with the TRO. Dkt. 30. A status conference occurred the next day. Dkt. 32.

Following that hearing, the district court issued an order that (i) withdrew the reference of the bankruptcy case "as to all issues relating to the Tesla Tooling," (ii) held that the automatic stay is inapplicable to the Tooling because Tesla owns it and it therefore "does not constitute property of the AAC-Texas's debtor's estate," (iii) granted Tesla relief from the automatic stay to the extent it applied because the Tooling "is not necessary to an effective reorganization," and (iv) permitted Tesla to "retrieve its Tooling from the Anderton Facility at the earliest opportunity and

7

[Appellant and AAC-Texas] . . . shall cooperate with that retrieval as set out in the TRO." Dkt. 34 at 1-2. Appellant filed this emergency appeal.

**ARGUMENT**

This Court cannot issue a stay pending appeal without appellate jurisdiction. *See Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO,* 473 U.S. 1301, 1306 (1985) ("[S]ince the Court of Appeals was without jurisdiction over the appeal from the District Court's order denying the temporary restraining order, the [appellate] motions panel was necessarily without authority to grant such a stay."). And this Court has generally "prohibit[ed] appeals from the grant or denial of a temporary restraining order." *In re Lieb*, 915 F.2d 180, 183 (5th Cir. 1990).

Even if the Court had jurisdiction to rule on the TRO and motion to stay at issue, it should not; a stay pending appeal is an "extraordinary remedy." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019). Four well-established factors govern: "1) whether the applicant has made a strong showing of likelihood to succeed on the merits; 2) whether the movant will be irreparably harmed absent a stay; 3) whether issuance of a stay will substantially injure other interested parties; and 4) where the public interest lies." *Id*. "The first two factors are usually the most important." *Id*. But even if the irreparable injury factor tilts towards movant, "[a] stay is not a matter of right," but rather "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). The party requesting a stay bears the burden of showing that

8

the circumstances justify an exercise of that discretion.  *Id*.  Appellant hasn't met that here.

Additionally, a stay should be granted only "in exceptional cases," and only where there "is great likelihood, ***approaching near certainty***, that [the movant] will prevail when [the] case finally comes to be heard on the merits."  *Greene v. Fair*, 314 F.2d 200, 202 (5th Cir. 1963) (emphasis added) (denying motion for stay).  There is no near certainty here.

## I.    The Court Lacks Jurisdiction Over This TRO Appeal.

As an initial matter, the Court should dismiss Appellant's motion because it lacks appellate jurisdiction to review the TRO.  *In re Lieb*, 915 F.2d at 183.  Not only is the TRO not appealable, but neither is the writ of replevin under 28 U.S.C. § 1292(a)(1).  *See Gore v. City of Desoto, Texas*, 2026 WL 2033175, at *1 (5th Cir. 2026) ("jurisdiction is limited to appeals from final decisions"); *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 632 (2d Cir. 1995) (replevin does not constitute injunction).

Appellant's conclusory assertion that the TRO is an injunction because it "changes the status quo" is unsupported and incorrect.  First, Appellant did not advance any "status quo" arguments in opposition to the TRO at the district court and therefore attempts to have the Court rule on arguments not presented below.  Moreover, the TRO actually *preserves* the status quo by enforcing Appellant's contractual commitment, as well as common law rights of ownership, to allow Tesla

9

unrestricted access to and possession of its Tooling without being subject to Appellant's demand for extra-contractual payments.[2] Appellant's argument that the TRO would accomplish the "irreversible transfer of possession" of the Tooling mischaracterizes its effect; it does not make ***any*** final determination as to the Tooling's permanent location, much less render the Tooling incapable of ever being moved again.

Unlike the inapposite cases referenced in Appellant's Motion, this TRO is not tantamount to an injunction because it expires after 14 days, preserves the status quo of the parties' agreement, and will not permanently or irretrievably alter the parties' rights respecting the Tooling. Because the Court lacks jurisdiction over the TRO, it likewise lacks authority to grant stay pending appeal. *See Off. of Pers. Mgmt.,* 473 U.S. at 1306.

## II.    Appellant Has Not Shown That It Is Likely to Succeed on the Merits.

Even if the Court does decide it has jurisdiction, Appellant has not made a "strong showing" to establish the first and most important factor: that it is likely to succeed on the merits. *See, e.g., Thomas*, 919 F.3d at 303.

---

[2] TROs addressing property rights are subject to the same appellate jurisdictional standards as other TROs. *See Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir. 1994) (finding short-duration TRO regarding dissipation of property unappealable).

**A.    Appellant fails to overcome the district court's finding that Tesla is likely to succeed on its claims.**

"As to each element of the district court's . . . analysis, the district court's findings of fact 'are subject to a clearly-erroneous standard of review.'" *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011).   Here, the district court's factual determinations are even further insulated by the court's express finding "that the testimony of Tesla's witnesses . . . which was elicited at the Hearing and subject to cross-examination, [was] credible."   TRO ¶ 3; *Deloach Marine Servs., L.L.C. v. Marquette Transportation Co., L.L.C.*, 974 F.3d 601, 607 (5th Cir. 2020) (employing strong presumption that the court's findings must be sustained "even though [the appellate] court might have weighed the evidence differently").

Appellant fails to contradict, much less overcome, the district court's findings. Based on voluminous evidence submitted and hours of live testimony at the hearing, the district court found that "Tesla has a substantial likelihood of success on the merits."   TRO ¶ 4.   When Appellant moved to stay that order just days later, it submitted **no** new evidence, facts, or arguments to explain why the district court erred in granting the TRO.   Dkt. 20.   Appellant now trots out the same arguments, again with no new facts (but much conjecture).   Importantly, Appellant does not challenge the district court's credibility finding; that factual foundation of the TRO is entitled to substantial deference.   Appellant has not, and cannot, show a likelihood of success on the merits.

11

**B.    Appellant's "Affiliate" argument is irrelevant to the enforcement of the TRO based on Tesla's non-contractual claims and fails under applicable law**

Appellant argues that it is substantially likely to prevail on the merits because the Contract's definition of "affiliate" does not apply to AAC-Texas, and thus neither Appellant nor the district court can order AAC-Texas to release the Tooling. Mot. 13. That argument fails.

As an initial matter, the district court finding that "Tesla has a substantial likelihood of success on the merits" is not limited to Tesla's contractual claim. TRO ¶ 4. Tesla's non-contractual claims for conversion and trespass to chattels do not depend on the interpretation of the term "affiliate" under the Contract. Dkt. 1 ¶ 72-89. Rather, they will succeed based on the district court's finding that (1) Tesla owns the Tooling (TRO ¶ 9) and (2) AAC-Texas, which controls the Tooling, is acting in concert with Appellant (*id*. ¶ 11). Since Appellant has not even identified an issue (much less submitted evidence) that would change this result, it cannot show a likelihood of success, regardless of the contract.

In any event, Appellant's argument on this issue fails. The case Appellant cites ***requires*** "[t]he language of a contract [] to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020). While the *Revitch* court declined to apply the contract as written to avoid absurdity, the reasons the court found

12

"absurdity" do not apply here: the Contract here is not a consumer contract, but between sophisticated business entities and it is being enforced not against the unwitting consumer counterparty but against the related affiliate. The case Appellant relies on similarly shows only that the absurdity analysis depends on context. Mot. 13.[3] The Contract here was between Tesla and Appellant to ensure that no matter which subsidiaries are involved or wink in or out of existence (or file for Chapter 11), Tesla can always retrieve its own property.

Thus, the Motion utterly fails to show that it would be ***absurd*** for the term "affiliate" in the Contract to encompass future affiliates. *Cf. Revitch,* 977 F.3d at 717 (holding "absurd results follow from DIRECTV's preferred interpretation").

### C.    Appellant fails to show that AAC-Texas cannot be bound by the TRO under Rule 65.

Appellant also argues that a "substantial" Rule 65 issue is presented because AAC-Texas is bound under the TRO without an alter-ego finding. Mot. 12-13. This is meritless. Rule 65 permits any person "in active concert or participation" with the enjoined party to be bound by a TRO, including those "in interest" or "in privity," regardless of any control being exercised or alter ego finding being made. FED. R.

---

[3] *See Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1282 (Fed. Cir. 2004) (holding that a settlement focused on "past acts of infringement" was not intended to release "future parents," since any such release could not possibly have been anticipated at time of settlement).

CIV. P. 65 (d)(2)(B)-(C); *Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, 159 F.4th 429, 453-455 (5th Cir. 2025) (directing the district court to enter an injunction including directors, affiliates, successors, and consultants in active concert or participation). The district court correctly cited this rule in binding AAC-Texas and its "officers, directors, agents, employees, members, representatives, parents, subsidiaries, and affiliates, and all others acting in concert and in active participation" with Appellant. TRO ¶¶ 11, 13. Alter ego is simply not required.

Despite Appellants' unsupported contentions, Rule 65 properly applies here because overwhelming evidence showed that Appellant and AAC-Texas are under common control and in active concert and participation, each of which is independently sufficient. *See In re SkyPort Global Communications, Inc.*, No. 08-36737, 2013 WL 4046397, at *69 (Bankr. S.D. Tex. Aug. 7, 2013) (holding a party bound by Rule 65 "if he is a party in interest, in privity or under the control of a named party, with each situation creating an independent basis for personally enjoining a non-party"). They need not be affiliated for Rule 65(d)(2) to apply. *Id*. at *61. Appellant and AAC-Texas are under the common control of, and thus acting in concert with, Nageesh Palakurthi, the CEO and President of Appellant and Governing Person of AAC-Texas. *See* Dkt. 16 at 3-6. Mr. Palakurthi made the decision to lock Tesla out from the Tooling, *see* Dkt. 16-2 at 7, and throughout this dispute, Mr. Palakurthi and Mr. Banga (VP of Finance) have represented that they

14

control the Tooling irrespective of which Angstrom entity possesses it. *See* Dkt. 10-3; Dkt. 16 at 5-6. Indeed, Mr. Banga confirmed in a declaration that AAC-Texas could continue producing parts for Tesla. *See* Dkt. 10-1 at ¶¶ 36-37. These representations are consistent with Appellant's own characterizations of itself as a "multinational group of affiliated companies" all subject to the common control of Mr. Palakurthi. *See* Dkt. 16-3 at 16; 16-1 at 63; 16-5 at 6. Appellant cannot now claim that AAC-Texas is an unconnected stranger unable to comply with the Court's Order.

### D.    Appellant's enforceability defenses are meritless.

Finally, without identifying any contractual provision, Appellant contends that the contract on which the TRO is based upon is unenforceable because (1) "a contract for the sale of goods for $500 or more is not enforceable beyond the quantity shown in a sufficient signed writing"; and (2) the contract lacks "mutuality because Tesla reserves discretion whether to issue releases and disclaims an obligation to purchase forecasted quantities while imposing supply obligations on [Appellant]." Mot. 14.

These arguments are so conclusory they should not be considered by the Court. *McDonald v. Longley*, 4 F.4th 229, n.38 (5th Cir. 2021) ("It is not enough to merely mention or allude to a legal theory."). To the extent Appellant argues the contract is unenforceable under the California statute of frauds, that argument fails.

15

Mot, at 14. That provision requires only evidence "that a contract for sale has been made between the parties and signed by the party." Cal. Com. Code § 2201(1). The Parties do not dispute that they entered into a "written" contract. Dkt. 15 ¶ 65 (Appellant's Answer) (noting that Tesla "states allegations concerning a written document(s), the contents of which speak for themselves"). Nor was there a lack of mutuality as this contract governed the parameters of the business relationship between the parties. Appellant does not dispute that "Tesla and [Appellant] entered into a valid, enforceable, and binding Contract." *Id*.

### E. The Order relating to AAC-Texas's bankruptcy is not at issue in this appeal and, to the extent relevant, favors Tesla.

Appellant devotes several pages to arguing that the district court erred when it *sua sponte* withdrew the reference of AAC-Texas's bankruptcy proceeding and ruled that the automatic stay did not apply to the TRO. *See* Mot. 14-19; Dkt. 34 (Order). Appellant further challenges the district court's alternative holding that, even if the stay applied, Tesla was entitled to relief from it to effectuate the TRO. *Id.* But Appellant ***never filed a notice of appeal from that order*** (Dkt. 34) (Appellant only appealed the TRO, Dkt. 24). As a result, this Court lacks jurisdiction to review it. *See Underwood v. Gen. Motors, LLC*, 642 F. App'x 468, 471 (5th Cir. 2016) ("[T]his court's jurisdiction is limited to the orders identified in the Notice of Appeal." (citing FED. R. APP. P. 3(C)(1)(B))).

16

Nor has Appellant explained how it would have standing to challenge the withdrawal of a bankruptcy reference in a non-party's bankruptcy proceeding. AAC-Texas's Chapter 11 filing—and the corresponding withdrawal of bankruptcy reference ordered by the district court—are irrelevant to *Appellant*'s likelihood of success on the merits against Tesla's claims here. Appellant's bankruptcy arguments should be ignored.

Even if Appellant had appealed that withdrawal of bankruptcy reference and had standing to do so, Appellant's challenge would nonetheless fail. The automatic stay imposed by 11 U.S.C. § 362(a) does not apply to the TRO because the Tooling is owned by Tesla, not AAC-Texas. *See In re Taylor*, No. 25-34536, 2026 WL 795489, at *4 (Bankr. S.D. Tex. Mar. 20, 2026) ("[T]he automatic stay *only applies* to property of the debtor and the bankruptcy estate." (emphasis added)). While this can include "arguable" property of the debtor, there is no argument here. *In re Chestnut*, 422 F.3d 298, 306 (5th Cir. 2005). AAC-Texas's bankruptcy petition expressly admitted it does not own the Tooling, just as the district court found in the TRO. Dkt. 30 at Ex. 1; TRO ¶ 9. That AAC-Texas clings to possession should not entitle it to an automatic stay, particularly given that the "bankruptcy filing was not commenced until days *after* the Court adjudicated Tesla's rightful ownership and possessory rights over the Tooling." Dkt. 34 at 2; *see In re Johnson,* 429 B.R. 540, 544-45 (Bankr. D.S.C. 2010) (truck in debtor's possession, but belonging to

17

employer, was not property of estate, so its repossession did not violate the automatic stay).

Appellant next suggests that the Tooling is needed for AAC-Texas's effective reorganization. Mot. 16-17 (citing 11 U.S.C. 362(d)(2)). Incorrect; the Tooling is currently valueless to AAC-Texas. It cannot be used to produce parts for anyone other than Tesla, AAC-Texas refused to produce parts for Tesla before it filed for bankruptcy, and Tesla has no intention of buying parts from AAC-Texas. *See* Dkt. 1 ¶¶ 12, 42-48, *see In re Wilks*, 123 B.R. 555, 562 (Bankr. W.D. Tex. 1991) (concluding asset must produce income to be necessary for reorganization).

Appellant's reliance on *In re Plastech Engineered Products, Inc.*, is misplaced. 382 B.R. 90 (E.D. Mich. 2008). There, the tooling possessed by the debtor was found necessary for reorganization because it was ***actively*** producing parts for ***multiple major customers*** during good-faith restructuring negotiations. *Id.* at 111. Here, the Tooling sits idle in the Anderton Facility (*see* Dkt. 12-2 at 7 (admitting that AAC-Texas "can" and "will" produce parts, not that it currently is or that Tesla would ever request same)), which contributes nothing to the "prospect" of an effective reorganization.[4] *United Savings Ass'n of Tex. v. Timbers of Inwood*

---

[4] Appellant devotes a few conclusory sentences to the district court's withdrawal of the reference, which should be ignored. Mot. 18; *Dardar v. Lafourche Realty Co. Inc.*, 985 F.2d 824, 831 (5th Cir. 1993) ("Questions posed for appellate review but inadequately briefed are considered abandoned.").

18

*Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988). Moreover, withdrawals of reference are not appealable. *See In re Lieb*, 915 F.2d at 184–85. So, while the district court's Order withdrawing the reference and lifting the automatic stay is not (and cannot be) at issue here, to the extent it is relevant, it favors Tesla's position. Appellant has thus failed to show that it is likely to succeed on the merits.[5]

### III.   Appellant Will Not Suffer Irreparable Harm from the TRO.

Appellant also fails to show any irreparable harm absent a stay. The Tooling has minimal value for it; it is not even using the Tooling right now, and it cannot use the Tooling to produce non-Tesla parts. Allowing Tesla to retrieve what is undisputedly Tesla's custom-made property, that no Angstrom entity is using, that can only be used to make parts for Tesla, cannot harm Appellant, let alone irreparably.

Instead, Appellant's primary argument for irreparable harm is that it could face civil contempt by trying to order AAC-Texas, an entity that it shares a governing person with, to comply with the TRO. Mot. 21. Revealingly though, ***the Motion does not assert that Appellant is unable to comply.*** It is not enough to speculate as to "some possibility of irreparable injury." *Nken*, 556 U.S. at 434-35 (citation

---

[5] To the extent the Court considers Appellant's fleeting reference to the Writ of Replevin, Mot. 19, that issue is not ripe, as the TRO expressly states that the Writ will only issue upon Tesla's request. TRO ¶ 18.

omitted, cleaned up).  Appellant's speculation about its possible inability to comply thus fails to identify any particular irreparable harm.  Further, even if Appellant is unable to order AAC-Texas to comply, AAC-Texas is separately and independently bound by the TRO under Rule 65; it must comply regardless of Appellant's control over it.

Appellant finally attempts to show irreparable harm by conclusively stating harms to AAC-Texas that were not raised below and have no support in the record.  Mot. 22.  What is in the record is that Appellant closed the Anderton Facility, Appellant refused to release the Tesla Tooling, and AAC-Texas filed for bankruptcy minutes after Appellant's deadline to comply with the TRO.  It cannot now use the results of those actions as equitable evidence in its favor.

## IV.  Tesla Will Be Substantially Harmed Absent Immediate Recovery of its Tooling.

The Motion entirely ignores the district court's multiple findings that emergency relief was needed to prevent the irreparable harm to Tesla that would result if it were not permitted to recover its Tooling immediately.  TRO ¶ 5; Dkt. 28 at 1.  Those findings are supported by a voluminous record.  *See* Dkts. 1, 4, 16.  And since the grant of the TRO last week, that harm has only grown. Dkt. 16 at 8.  Instead of meeting its burden to show otherwise, Appellant simply reasserts that it and AAC-Texas will be harmed by the TRO and suggests that Tesla accept parts while pursuing monetary damages "in the ordinary course." Mot. 23. The main problem

with that, of course, is Appellant is not selling parts to Tesla from the Tooling and Tesla is not buying those parts. The Motion thus fails its burden on this stay factor.

Neither should the Court be swayed by the Motion's suggestion, unsupported by law, that the stay should be granted if the "balance of harms" favors it. Mot. 22-23. To the extent the balance of equities is relevant to the Court's decision, the district court has already weighed them and correctly decided them in Tesla's favor. TRO ¶ 6.

## V.     Preventing Tesla from Recovering the Tooling is Not in the Public Interest.

Finally, Appellant fails to show that a stay would serve the public interest. It argues that the public interest favors staying the TRO to preserve the business of a Chapter 11 debtor. Mot. 23-24. This is curious because Appellant is not a Chapter 11 debtor, and it was Appellant's decision to shut down the Anderton Facility and prompt Tesla to take immediate action to retrieve its Tooling. Preserving a bankruptcy estate that it orchestrated (and one that does not even include the Tooling) after refusing to honor its contractual obligations and holding Tesla's property hostage is not in the public interest. It is in the public interest to enforce a TRO in that situation.

## CONCLUSION

The Court lacks jurisdiction over this TRO appeal, and Appellant has not carried its burden on any stay factor. The Court should deny the Motion and lift the administrative stay so that Tesla may retrieve its Tooling.

Dated: August 8, 2026

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Ethan Glenn*
Marc B. Collier
Texas Bar No. 00792418
marc.collier@nortonrosefulbright.com
Ethan Glenn
Texas Bar No. 24101810
ethan.glenn@nortonrosefulbright.com
Telephone:  (512) 474-5201
Facsimile:   (512) 536-4598

-and-

Kevin Lie
Texas Bar No. 24136085
kevin.lie@nortonrosefulbright.com
1550 Lamar St., Suite 2000
Houston, TX 77010
Telephone:  (713) 651-3769
Facsimile:   (713) 651-5246

*Counsel for Plaintiff-Appellee Tesla, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that an electronic copy of this document was served by the Court's electronic-filing system on counsel for Appellees in compliance with Federal Rule of Appellate Procedure 25 and Fifth Circuit Rule 25.2.5 on August 8, 2026.   The undersigned counsel further certifies that an electronic (PDF) copy of said motion was electronically filed with the Clerk of the Fifth Circuit in compliance with Fifth Circuit Rule 25.2 on August 8, 2026.

Dated:  August 8, 2026            */s/ Ethan Glenn*
                                  Ethan Glenn

                                  *Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains 5,179 words, excluding those items identified in Fed. R. App. P. 32(f).  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

Dated:  August 8, 2026            */s/ Ethan Glenn*
                                  Ethan Glenn

                                  *Counsel for Plaintiff-Appellee*

23