**No. 26-50650**

In The
# United States Court of Appeals for the Fifth Circuit

TESLA, INC.,

Plaintiff-Appellee,

v.

ANGSTROM AUTOMOTIVE GROUP, LLC,

Defendant-Appellant.

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
Civil Action No. 6:26-cv-00477

# Appellant's Response to Appellee's Motion to Dismiss Appeal for Lack of Jurisdiction

Todd A. Holleman
Miller Johnson
500 Woodward Ave., Suite 3600
Detroit, MI 48226
313-672-6939
hollemant@millerjohnson.com

Stephen J. van Stempvoort
Miller Johnson
45 Ottawa Avenue, SW – Suite 1100
Grand Rapids, MI 49503
616-831-1765
vanstempvoorts@millerjohnson.com

***Attorneys for Defendant-Appellant Angstrom Automotive Group, LLC***

# Table of Contents

**Page**

Index of Authorities ........ ii

Certificate of Interested Persons and Corporate Disclosure ........ iv

Introduction ........ 1

A. Tesla files a complaint against only Angstrom Automotive, demanding possession of the Tooling. ........ 2

B. After a hearing, the district court enters a TRO allowing Tesla to obtain possession of the Tooling. ........ 3

C. Angstrom Automotive files this appeal, this Court denies a stay, and Tesla repossesses the Tooling. ........ 4

Argument ........ 5

I. Angstrom Automotive's appeal properly invoked this Court's jurisdiction because the TRO had the practical effect of a preliminary injunction. ........ 5

A. The TRO was entered after an evidentiary hearing. ........ 5

B. The TRO has the same practical effect as a permanent injunction. ........ 8

II. Because Tesla mooted Angstrom Automotive's appeal by its own conduct, the TRO should be vacated. ........ 13

Conclusion ........ 16

Certificate of Service ........ 18

Certificate of Compliance ........ 18

# Index of Authorities

**Page(s)**

**Cases**

*AT&T Commc'ns of the Sw., Inc. v. City of Dallas*,
243 F.3d 928 (5th Cir. 2001) .......... 14

*Belo Broad. Corp. v. Clark*,
654 F.2d 423 (5th Cir. 1981) .......... 5, 6, 8

*Butts v. Aultman*,
953 F.3d 353 (5th Cir. 2020) .......... 6

*Camreta v. Greene*,
563 U.S. 692 (2011) .......... 15

*Canal Auth. of State of Fla. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) .......... 10

*Dep't of Educ. v. California*,
604 U.S. 650 (2025) .......... 8

*Goldin v. Bartholow*,
166 F.3d 710 (5th Cir. 1999) .......... 13, 14, 16

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*,
415 U.S. 423 (1974) .......... 6

*Green Valley Special Util. Dist. v. City of Schertz*,
969 F.3d 460 (5th Cir. 2020) .......... 14

*Jones v. Belhaven Coll.*,
98 F. App'x 283 (5th Cir. 2004) .......... 8

*Matter of Lieb*,
915 F.2d 180 (5th Cir. 1990) .......... 11

*Motient Corp. v. Dondero*,
529 F.3d 532 (5th Cir. 2008) .......... 14

## **Index of Authorities**

**Page(s)**

*N.D. v. Hawaii Dep't of Educ.*,
600 F.3d 1104 (9th Cir. 2010) .......... 10

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 7, 12

*Staley v. Harris Cnty.*,
485 F.3d 305 (5th Cir. 2007) .......... 13, 14, 16

*TitleMax of Texas, Inc v. City of Dallas*,
142 F.4th 322 (5th Cir. 2025) .......... 8

*Turner v. Epps*,
460 F. App'x 322 (5th Cir. 2012) .......... 7

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994) .......... 13, 14, 16

*United States v. Munsingwear*,
340 U.S. 36 (1950) .......... 13

*Voice of the Experienced v. LeBlanc*,
No. 25-30322, 2025 WL 2481382 (5th Cir. Aug. 28, 2025)
(per curiam) .......... 14

*Voice of the Experienced v. Westcott*,
No. 24-30420, 2025 WL 2222990 (5th Cir. Aug. 5, 2025)
(per curiam) .......... 14

**Statutes**

28 U.S.C. § 1292(a)(1) .......... 2, 7, 12

**Other Authorities**

Fed. R. Civ. P. 65 .......... 3, 6, 7, 11, 12

## Certificate of Interested Persons and Corporate Disclosure

Counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges may evaluate possible disqualification or recusal.

- Plaintiff-Appellee: Tesla, Inc.
- Defendant-Appellant: Angstrom Automotive Group, LLC
- Chapter 11 debtor and entity possessing the Tooling: Angstrom Aluminum Castings Texas, LLC
- Counsel for Defendant-Appellant: Todd Holleman and Stephen J. van Stempvoort of Miller Johnson
- Counsel for Tesla, Inc.: Marc B. Collier, Ethan Glenn, Kayla Ahmed, and Kevin Lie of Norton Rose Fullbright
- Counsel for Angstrom Aluminum Castings Texas, LLC: Jason Binford, J. Casey Roy, and JaKayla J. DaBera of Kane Russell Coleman Logan, PC

Dated: August 24, 2026

/s/ Stephen J. van Stempvoort
*Counsel for Appellant*

## Introduction

Tesla's motion is partially right and partially wrong. Because Tesla took the tooling after this Court declined to stay the district court's TRO, Tesla has mooted Angstrom Automotive Group, LLC's ("Angstrom Automotive's") appeal of the TRO. But Tesla is not entitled to both prevent Angstrom Automotive from appealing the TRO and also keep the TRO intact. Because Tesla unilaterally mooted the appeal and prevented Angstrom Automotive from obtaining appellate review of the TRO, this Court should vacate the TRO instead of simply dismissing this appeal.

Tesla is also wrong about jurisdiction. This Court has jurisdiction over Angstrom Automotive's appeal of the TRO not only because it was entered after an adversarial evidentiary hearing but also because the TRO had the same practical effect as a preliminary injunction. Tesla, after all, never filed a motion for preliminary injunction after the TRO expired—because it did not need to. The TRO had already given Tesla everything that it could have asked for. Having repossessed the tooling, Tesla obtained the same result from the TRO that it would have sought in a preliminary injunction. That reality confirms this Court's

jurisdiction under 28 U.S.C. § 1292(a)(1), regardless of the label affixed to the district court's order.

The district court's TRO should be vacated. Only then should Angstrom Automotive's appeal be dismissed as moot.

## Factual Background

### A. Tesla files a complaint against only Angstrom Automotive, demanding possession of the Tooling.

On July 23, 2026, Tesla filed a complaint in the district court against Angstrom Automotive. ECF 1, Complaint ¶ 7. According to the complaint, Tesla purchased and owns certain Tooling that is used to produce automotive parts for Tesla. ECF 1, Complaint ¶¶ 12, 14, 22.

When the complaint was filed, some of the Tooling was located at a manufacturing facility in Troy, Texas. Although that facility was formerly owned by Anderton Castings, LLC, it is now owned by a different entity, Angstrom Aluminum Castings Texas, LLC ("AAC-Texas"). ECF 10-1, Banga Decl. ¶¶ 7-9. The sole defendant whom Tesla named in its complaint— Angstrom Automotive—does not possess the Tooling, does not control AAC-Texas, and ceased operations in 2024. ECF 10-1, Banga Decl. ¶¶ 4-5, 7.

Tesla's complaint asserted causes of action for breach of contract, anticipatory repudiation, conversion, trespass to chattels, and declaratory judgment. ECF 1, Complaint ¶¶ 55-102. As relief, however, Tesla did not seek any damages; it sought only "specific performance, equitable injunctive relief as well as attorneys' fees and court costs." ECF 1, Complaint ¶ 104; see also ECF 1, Complaint ¶ 106. Specifically, Tesla demanded a temporary restraining order ("TRO") and a preliminary injunction order requiring "Angstrom and its affiliates" to allow Tesla to obtain immediate possession of the Tooling. ECF 1, Complaint ¶ 106.

### B. After a hearing, the district court enters a TRO allowing Tesla to obtain possession of the Tooling.

Having named only Angstrom Automotive in its complaint, Tesla filed a motion for a TRO demanding the return of the Tooling from AAC-Texas's facility. Tesla argued that AAC-Texas is an "affiliate" of Angstrom Automotive and could be reached under Federal Rule of Civil Procedure 65, even though Tesla failed to name AAC-Texas in its complaint. ECF 3, Motion 5. Angstrom Automotive filed a response, pointing out that Tesla had failed to sue the correct entity and was in

any event incorrect that it was entitled to possession of the Tooling. ECF 10, Response 1-19.

Instead of granting the TRO ex parte, the district court held an evidentiary hearing on July 31, 2026. ECF 14, Order 1. At that hearing, the parties presented testimony from several witnesses and submitted documents as exhibits. ECF 39, Transcript 157.

At the conclusion of the hearing, the district court made several credibility findings and orally granted the TRO. ECF 39, Transcript 162-164. The district court subsequently memorialized its ruling in a written TRO dated August 3, 2026, which remains sealed on the district court's docket.

### C. Angstrom Automotive files this appeal, this Court denies a stay, and Tesla repossesses the Tooling.

On August 7, 2026, Angstrom Automotive appealed the TRO to this Court and filed an emergency motion for a stay. 5th Cir. RE 12, Emergency Motion for Stay. On August 10, 2026, the Court denied Angstrom Automotive's motion for a stay. 5th Cir. RE 29, Order. Shortly after the Court denied the motion for a stay, Tesla retrieved and took possession of the Tooling.

Having obtained possession of the Tooling, Tesla did not file a motion for preliminary injunction, even after the TRO expired at the conclusion of the 14-day period on August 17, 2026.

Tesla now moves to dismiss Angstrom Automotive's appeal of the TRO, arguing that this Court lacks jurisdiction over the appeal and that the appeal is moot. 5th Cir. RE 55, Corrected Motion.

## Argument

### I. Angstrom Automotive's appeal properly invoked this Court's jurisdiction because the TRO had the practical effect of a preliminary injunction.

#### A. The TRO was entered after an evidentiary hearing.

Tesla's recycled jurisdictional argument has not become any better than it was before. Although a true TRO is generally not immediately appealable, "[t]he label appended by the requesting party or the judge" to an order "is not conclusive as to its proper characterization." *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 426 (5th Cir. 1981). Relying on only a treatise and an unpublished case from the Eighth Circuit, Tesla argues that the fact that a hearing occurred does not mean that the TRO amounts to a preliminary injunction. Mot. 10-11.

But that argument disregards this Court's precedent. This Court has held that "the denial of a so-called temporary restraining order is properly appealable when entered after a hearing in which all interested parties had an opportunity to participate, thus allowing for full presentation of relevant facts." *Belo Broad. Corp.*, 654 F.2d at 426. "A temporary restraining order may be treated as a preliminary injunction when an adversarial hearing has taken place." *Butts v. Aultman*, 953 F.3d 353, 361 n.6 (5th Cir. 2020).

There are good reasons for this approach. First, the "underlying purpose" of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). Tesla's notion that a hearing is only marginally relevant fails to appreciate that the hearing is the whole point. A TRO is intended only to serve as a stop-gap preserver of the status quo before a hearing can be held, not to control the parties' obligations after the parties have already been heard. *Id.*; see also Fed. R. Civ. P. 65(b). A TRO issued

after a hearing—complete with witness testimony and findings of fact—is preliminary injunctive relief.

Second, once a hearing is held and evidentiary findings are made, characterizing subsequently issued injunctive relief as an unappealable "TRO" amounts to nothing more than an end-run of 28 U.S.C. § 1292(a)(1). If a district court "were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions," then it "would have virtually unlimited authority over the parties in an injunctive proceeding." *Turner v. Epps*, 460 F. App'x 322, 326 (5th Cir. 2012) (quoting *Sampson v. Murray*, 415 U.S. 61, 86–87 (1974)). Thus, "[a]s the Supreme Court has explained, in cases 'where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified.'" *Id.* (quoting *Sampson*, 415 U.S. at 87).

That reasoning applies with full force here. Instead of granting an ex parte TRO under Rule 65(b), the district court held an evidentiary hearing, took testimony, made factual findings, and entered an order

granting affirmative injunctive relief. That the order is labeled a "TRO" does not change its true substance. *Belo Broad. Corp.*, 654 F.2d at 426.

### B. The TRO has the same practical effect as a permanent injunction.

Every other consideration favors jurisdiction, too. Despite Tesla's attempts to ignore the obvious, the TRO entered here has "the same practical effect as the granting of a preliminary injunction." *Jones v. Belhaven Coll.*, 98 F. App'x 283, 284 (5th Cir. 2004); *see also Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (TRO immediately appealable where it "carries many of the hallmarks of a preliminary injunction").

Tesla acknowledges that the TRO required Angstrom Automotive to engage in affirmative acts: namely, disassembling, preparing, staging, and surrendering nine sets of unique, custom-manufactured Tooling. Unlike a typical prohibitory TRO that preserves the status quo pending further proceedings, the district court's order compelled a concrete, immediate transfer of physical possession of valuable property. *See TitleMax of Texas, Inc v. City of Dallas*, 142 F.4th 322, 328–29 (5th Cir. 2025) (noting difference between mandatory and prohibitive injunctions); *see Dep't of Educ.*, 604 U.S. at 651 (order

requiring affirmative relief—the payment of grant obligations—had the hallmarks of a preliminary injunction).

Most importantly, the relief that was granted in the TRO was designed to give Tesla virtually all of the equitable relief that it sought in its complaint—and to allow it to be wholly completed within the TRO's 14-day window. The primary relief sought in Tesla's complaint (other than its add-on request for attorneys' fees) was a demand for possession of the Tooling. ECF 1, Complaint ¶¶ 104, 106. And once the TRO was entered, Tesla was able to obtain possession of the Tooling in a single day. The district court's TRO therefore gave Tesla not only all of the relief that it could have obtained in a preliminary injunction but also most of the equitable relief that it sought in its complaint.

It is therefore difficult to comprehend Tesla's argument that the TRO did not have the same "practical effect" as a preliminary injunction. After all, Tesla felt no need to move for a preliminary injunction after it had already seized the Tooling. Tesla did not file a motion for preliminary injunction after the TRO expired, either. That is because the TRO had already given Tesla all of the relief that it could ask for.

None of Tesla's arguments detract from this reality. Tesla's insistence that the TRO merely preserves the status quo, for instance, is far off the mark. "The status quo means 'the last, uncontested status which preceded the pending controversy.'" *N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (citation omitted); *see also Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (referring to "the last uncontested status quo between the parties"). Under that test, the actual, physical status quo before the parties' dispute was that the Tooling was located at AAC-Texas's facility and that Tesla did not have possession of it. The TRO, of course, altered that status quo dramatically.

Tesla tries to argue that the status quo was instead that Tesla had underlying contractual and possessory rights to the Tooling. Mot. 7-10. But the parties' whole dispute is whether Tesla is correct about its asserted contractual and possessory rights. Defining the "status quo" as "Tesla is correct about the merits of its claims" improperly assumes the merits of the dispute. There is no mystery about why Tesla filed the complaint in the first place: it did so to change the status quo by

obtaining possession of the Tooling. Tesla's novel argument that the TRO merely preserved the status quo is a non-starter.

Nor can Tesla win the day by emphasizing that the TRO expired in 14 days and was not renewed longer than the duration set out in Rule 65(b). Cases like *Lieb* stand only for the proposition that TROs generally do not change the parties' relative positions for longer than 14 days and that any longer-lasting alteration can be appealed from an order entering preliminary injunctive relief. *Matter of Lieb*, 915 F.2d 180, 183 (5th Cir. 1990).

Here, by contrast, there is no material difference between a 14-day TRO and a preliminary injunction. Tesla did not need more than a 14-day window in order to fully complete retrieval of the Tooling. Tesla managed to secure within the TRO's 14-day window the *same* relief that Tesla would have been able to procure if it had obtained a preliminary injunction. That is why Tesla hasn't tried to convert the TRO into a formal preliminary-injunction order. Tesla never needed anything more than a TRO to accomplish exactly what it would have accomplished if it had been granted a preliminary injunction. That is a good indication that there is no practical difference between the two.

The implications of Tesla's argument are significant. Tesla presumably would agree that, if the TRO was converted into a preliminary injunction, it would then be appealable under § 1292(a)(1). But—because Tesla already has the Tooling that it sought—any request for a preliminary injunction would be moot. And because a preliminary injunction order will not issue, Angstrom Automotive—under Tesla's theory—will never have an opportunity to appeal under § 1292(a)(1). By demanding that the district court award Tesla the ultimate relief that it sought in its complaint in an order labeled a "TRO," Tesla would be able to insulate the district court's decision from appellate review.

That is not the way the rules work. Rule 65(b)'s 14-day period is intended to limit the scope of the district court's authority to enter a TRO that has permanent effects. Fed. R. Civ. P. 65(b)(2); *Sampson*, 415 U.S. at 86. The 14-day period does not—as Tesla would have it—give district courts free rein to enter orders that can never be appealed as long as a party fully secures its requested relief before the TRO expires. Fed. R. Civ. P. 65(b)(2); *Sampson*, 415 U.S. at 86. Angstrom Automotive's appeal properly invoked this Court's jurisdiction under § 1292(a)(1).

## II. Because Tesla mooted Angstrom Automotive's appeal by its own conduct, the TRO should be vacated.

Next, Tesla argues that it successfully mooted Angstrom Automotive's appeal by taking possession of the Tooling under the terms of the TRO. But because Tesla prevented Angstrom Automotive from obtaining appellate review on the merits of the district court's TRO, the TRO must be vacated, not left intact.

"If a case becomes moot on appeal, the general rule is still to vacate the judgment of the lower court and remand with instructions to dismiss the case as moot." *Goldin v. Bartholow*, 166 F.3d 710, 718–19 (5th Cir. 1999) (citing *United States v. Munsingwear*, 340 U.S. 36 (1950)). This general rule turns on the recognition "that an order may become unappealable due to no fault of the losing party, thus denying review of a possibly erroneous decision." *Id.* at 720. As the Supreme Court put it, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).

Because vacatur is an equitable remedy, it must be determined "on a case-by-case basis." *Staley v. Harris Cnty.*, 485 F.3d 305, 310 (5th

Cir. 2007). But in weighing the equities, "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* (quoting *U.S. Bancorp*, 513 U.S. at 24). If the appellant did not contribute to the mootness, then vacatur is required: "[V]acatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court." *Id.* (quoting *U.S. Bancorp*, 513 U.S. at 23). Thus, "when mootness results from unilateral action of the party who prevailed below," this Court must vacate the order that the losing party appealed instead of simply dismissing the appeal and allowing the order to stand. *U.S. Bancorp*, 513 U.S. at 25; *see also Voice of the Experienced v. Westcott*, No. 24-30420, 2025 WL 2222990, at *3 (5th Cir. Aug. 5, 2025) (per curiam) (noting mandatory nature of rule).

This Court has repeatedly followed this rule. *See, e.g.*, *Voice of the Experienced v. LeBlanc*, No. 25-30322, 2025 WL 2481382, at *3 (5th Cir. Aug. 28, 2025) (per curiam); *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 470 (5th Cir. 2020); *Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008); *AT&T Commc'ns of the Sw., Inc. v. City of Dallas*, 243 F.3d 928, 931 (5th Cir. 2001); *Goldin*, 166 F.3d at

721. And its application is particularly appropriate where, as here, a party who obtains a preliminary injunction in the district court prevents the losing party from obtaining appellate review by mooting the case while it is on appeal. "The point of vacatur is to prevent an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by what we have called a 'preliminary' adjudication." *Camreta v. Greene*, 563 U.S. 692, 713 (2011).

That rule fully applies here. After losing in the district court, Angstrom Automotive filed this appeal, seeking review of the TRO. Angstrom Automotive also sought a stay of the TRO pending appeal to ensure that the controversy would remain live pending appeal. Tesla, however, defeated the motion for stay and then took repossession of the Tooling, mooting Angstrom Automotive's appeal.

Having mooted Angstrom Automotive's ability to challenge the TRO, Tesla now wants to retain all the benefits that it obtained from the TRO by keeping it in place. Tesla may, for example, try to use the district court's TRO and related findings in an attempt to recover attorneys' fees. ECF 1, Complaint ¶ 104. But—having unilaterally prevented Angstrom Automotive from appealing the TRO—it would be

inappropriate for Tesla to take advantage of the district court's TRO now. When the prevailing party's unilateral conduct prevents the losing party from being able to appeal a lower court's order, vacatur is necessary to "avoid[ ] the unfairness of a party's being denied the power to appeal an unfavorable [order] by factors beyond its control." *Goldin*, 166 F.3d at 719.

Vacating the TRO properly "clears the path for future relitigation of the issues between the parties." *U.S. Bancorp*, 513 U.S. at 22. Any other result would contradict the principle that "the party causing mootness does not get the benefit of the judgment below." *Staley*, 485 F.3d at 311 n.2. To the extent that Tesla demands that the appeal be dismissed and the TRO left intact, its motion should be denied.

## Conclusion

Tesla's motion should be denied to the extent that it requests that the district court's TRO remain intact. The TRO should instead be vacated, after which the appeal may be dismissed as moot.

Respectfully submitted,

Date: August 25, 2026

/s/ Stephen J. van Stempvoort
Stephen J. van Stempvoort
Miller Johnson
45 Ottawa Avenue, SW – Suite 1100
Grand Rapids, MI 49503
616.831.1100
vanstempvoorts@millerjohnson.com

Todd A. Holleman
500 Woodward Ave., Suite 3600
Detroit, MI 48226
313-672-6939
hollemant@millerjohnson.com

***Attorneys for Defendant-Appellant Angstrom Automotive Group, LLC***

## Certificate of Service

I hereby certify that on August 25, 2026, the foregoing Response was served upon counsel of record through the Court's CM/ECF filing system and that opposing counsel was notified of the emergency filing.

## Certificate of Compliance

This motion complies with Federal Rules of Appellate Procedure 27(d), 32(a)(5)-(6), and 32(g). It is prepared in 14-point Century Schoolbook typeface and contains no more than 3,145 words, excluding items excluded by Rule 32(f) and accompanying documents authorized by Rule 27(a)(2)(B).

By: /s/ Stephen J. van Stempvoort